IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RACHEL KIMBROUGH, as Personal Representative of the Estate of LEE ALEXANDER CHOUTEAU, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-23-00320-PRW |
| BOARD OF TRUTEES FOR THE OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, *et al.*, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **ORDER**

Before the Court are five Motions to Dismiss filed by Defendant Turn Key Health Clinics, LLC ("Turn Key") (Dkt. 19), Defendants Dallas Jones and Lisa Hooker (Dkt. 29), Defendant Liliana Jaquez (Dkt. 37), Defendant Abdullah Khan (Dkt. 40), and Defendant Jessica Oliver (Dkt. 48).[1] Plaintiff Rachel Kimbrough responded to all five motions (Dkts. 20, 34, 41, 42, 49), and Defendants replied (Dkts. 23, 38, 44, 45, 50). For the reasons given below, the Court **GRANTS** Defendants Hooker, Jones, and Khan's Motions to Dismiss (Dkts. 29, 40), **GRANTS** in part and **DENIES** in part Defendant Turn Key's Motion to Dismiss (Dkt. 19), and **DENIES** Defendants Jaquez and Oliver's Motions to Dismiss (Dkts. 37, 48).

---

[1] The Court refers to the Defendants that have filed these motions collectively as "Defendants." This Order does not apply to the non-moving Defendants.

1

*Background*[2]

The night of June 23, 2021, Trooper Carlton of the Oklahoma Highway Patrol pulled over Lee Alexander Chouteau. Trooper Carlton noticed visible signs of intoxication. After Mr. Chouteau failed a sobriety test, Trooper Carlton arrested him for suspected driving under the influence and transported him to the Oklahoma County Detention Center ("OCDC").

While on the way to OCDC, Mr. Chouteau was unruly, and he was uncooperative and resisted officers' attempts to move him when he arrived at OCDC. Officers placed him on the ground and restrained him. Officers then moved Mr. Chouteau into OCDC and again restrained him on the ground. Defendant Jessica Oliver, an employee of Turn Key who provided medical services to inmates at OCDC, observed Mr. Chouteau when he arrived at OCDC. When she observed Mr. Chouteau, he was sweating profusely, slurring his words, visibly bleeding, and was noted by officers as being intoxicated. Ms. Oliver then called for Defendant Liliana Jaquez, another Turn Key employee who provided medical services to OCDC inmates, for assistance. Ms. Jaquez and Ms. Oliver observed that Mr. Chouteau had an elevated heart rate, elevated blood pressure, and that he was slurring his speech and experiencing hyperhidrosis (*i.e.*, excessive sweating). Ms. Jaquez and Ms. Oliver then provided permission to correctional officers to book Mr. Chouteau in OCDC. However, they did not record any of Mr. Chouteau's symptoms on his medical chart.

---

[2] At this stage, the Court accepts the Plaintiff's well-pleaded allegations as true. Therefore, the account presented in this factual background reflects the Plaintiff's account.

Defendant Officer Lisa Hooker performed Mr. Chouteau's initial booking. At around 1:15 a.m. on June 24, 2021, Mr. Chouteau was placed in a holding room in OCDC. At 6:55 a.m., Mr. Chouteau was observed in the holding room lying in his bunk. Sometime during the morning on June 24, 2021, Defendant Khan performed a sight check on Mr. Chouteau and did not see him move. Later that day at 4:25 p.m., Captain Milton and Sergeant Gordon entered Mr. Chouteau's cell and found him unresponsive. They were the first officers to enter Mr. Chouteau's cell since he was placed there. Captain Milton and Sergeant Gordon called for nurses, and an OCDC nursing staff member arrived and began performing CPR on Mr. Chouteau. Around ten minutes later, the Oklahoma City Fire Department arrived and stated that Mr. Chouteau was dead upon arrival. The medical examiner who conducted Mr. Chouteau's autopsy estimated that he was dead for eight to ten hours before Captain Milton and Sergeant Gordon entered his cell.

Rachel Kimbrough, as personal representative of the estate of Mr. Chouteau, filed an Amended Complaint (Dkt. 14) asserting two causes of action against all Defendants. The first is a 42 U.S.C. § 1983 claim for violations of Mr. Chouteau's rights under the Eighth and Fourteenth Amendments to the United States Constitution, and the second is a claim for violations of the Oklahoma wrongful death and survival statutes.[3] Defendants have moved to dismiss both claims.

---

[3] Although the Amended Complaint does not explicitly state whether its claims are against the individually named Defendants in their individual capacities, their official capacities, or both, the Amended Complaint contains no request for injunctive relief. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 112 S. Ct. 358, 116 L.Ed.2d

*Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll well-pleaded facts, as distinguished from conclusory allegations,"[4] must be accepted as true and viewed "in the light most favorable to the plaintiff."[5] Parties bear the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6] The pleaded facts must be sufficient to establish that the claim is plausible.[7] In considering whether a claim is plausible, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[8] Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it "state[s] a claim to relief that is plausible on its face," meaning that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged."[9]

---

301 (1991)). Accordingly, the Court construes the Amended Complaint's claims against the individually named defendants as being against them in their individual capacities only.

[4] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

[5] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[7] *See id.*

[8] *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

*Discussion*

I.  Section 1983

To assert a claim under § 1983, a plaintiff must show (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right.[10] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[11]  This authority may be either "actual or apparent,"[12] and "[w]hether a defendant acted under color of state law is a mixed question of fact and law."[13]

*A. Qualified Immunity*

Defendants Jones, Hooker, and Khan assert that they are immune from suit because they are entitled to qualified immunity. Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[14] Plaintiff must therefore show (1) that Defendants' alleged conduct violated a constitutional right and (2) that the right was clearly established at the

---

[10] *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

[11] *Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1941)).

[12] *Id.* at 493.

[13] *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

[14] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

time of the alleged unlawful activity.[15] "Because there are cases where [the Court] can more readily decide the law was not clearly established before reaching the more difficult question of whether there has been a constitutional violation, [the Court] may exercise discretion in deciding which prong to address first."[16]

Because this is such a case, the Court first considers whether the right was clearly established at the time of the alleged unlawful activity. "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[17] Ordinarily, to make a showing of clearly established law, "the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[18] Clearly established law "must be 'particularized' to the facts of the case," and "should not be defined 'at a high level of generality.'"[19] "[T]his does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question regarding the illegality of the defendant's conduct beyond debate."[20] When a plaintiff relies on the weight of authority from other circuits to show

---

[15] *See Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018).

[16] *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016).

[17] *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

[18] *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020) (internal quotation marks and citations omitted).

[19] *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted).

[20] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotation marks and alterations omitted).

that a right is clearly established "the relevant inquiry is whether there is consensus regarding the existence of the constitutional right at issue."[21] "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances,"[22] but only in "obvious" cases.[23]

Plaintiff makes no response to Defendants Jones, Hooker, and Khan's claim of qualified immunity, and fails to identify any case clearly establishing that these Defendants' alleged conduct was unconstitutional. Because Plaintiff has failed to do so, qualified immunity bars Plaintiff's individual-capacity claims against Defendants Jones, Hooker, and Khan. Accordingly, Plaintiffs' § 1983 claims against them are dismissed without prejudice.[24]

*B. Defendants Turn Key, Jaquez, and Oliver*

While Ms. Kimbrough brings § 1983 claims for deliberate indifference to Mr. Chouteau's serious medical needs under both the Eighth and Fourteenth Amendments, the Court applies "the same deliberate indifference standard no matter which amendment

---

[21] *Irizarry v. Yehia*, 38 F.4th 1282, 1296 (10th Cir. 2022) (citing *Ullery v. Bradley*, 949 F.3d 1282, 1300 (10th Cir. 2020)).

[22] *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

[23] *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

[24] If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice. *Breidenbach v. Bolish*, 126 F.3d 1288, 1294 (10th Cir. 1997); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

provides the constitutional basis for the claim."[25] To state such a claim, Ms. Kimbrough "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[26] First, the standard contains an objective component that requires a "sufficiently serious" alleged deprivation.[27] A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[28] Second, the standard contains a subjective component, which requires the plaintiff to show "that a medical 'official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.'"[29]

Defendants Turn Key, Jaquez, and Oliver first argue that the Amended Complaint lacks allegations establishing that Jaquez and Oliver were subjectively aware of and disregarded an excessive risk to Mr. Chouteau's health. The Amended Complaint alleges that when Defendants Jaquez and Oliver observed Mr. Chouteau, he was sweating profusely, slurring his words, visibly bleeding, and was intoxicated. The Amended Complaint further alleges that Defendants Jaquez and Oliver then permitted correctional

---

[25] *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)).

[26] *Id.* (quoting *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001)).

[27] *Id.* (quoting *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)).

[28] *Id.* at 990 (quoting *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018)).

[29] *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)) (alteration in original).

officers to book him into OCDC. Viewed in the light most favorable to Plaintiff, Plaintiff has plausibly alleged that Defendants Jaquez and Oliver were subjectively aware of an excessive risk of serious harm to Mr. Chouteau and disregarded that risk.

Next, Defendants Turn Key, Jaquez, and Oliver tacitly concede that Plaintiff has met the objective component of deliberate indifference, as their motions to dismiss present no argument on this point. Indeed, the Amended Complaint alleges that Defendants' denial of medical care led to Mr. Chouteau's death, which is, of course, a sufficiently serious injury to satisfy the objective component. Accordingly, Plaintiff has stated plausible § 1983 claims against Defendants Jaquez and Oliver.

Defendant Turn Key, however, argues that it is not vicariously liable for its employees' actions and correctly points out that as a private entity acting under color of state law, it is subject to the same § 1983 liability standard that applies to municipal governments.[30] Under this standard, known as *Monell* liability, a plaintiff must show (1) that a private entity acting under color of state law enacted or maintained a policy or custom, (2) that the policy or custom was the moving force behind the alleged violation, and (3) that the private entity was deliberately indifferent to the resulting constitutional

---

[30] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying municipal liability standard in § 1983 suit against private entity acting under color of state law); *Alamiin v. Beasley*, No. CIV-06-871-F, 2011 WL 2636538, 2011 U.S. Dist. LEXIS 72738, at *4 (W.D. Okla. June 13, 2011), *report and recommendation adopted*, No. CIV-06-0871-F, 2011 WL 2649712, 2011 U.S. Dist. LEXIS 72658 (W.D. Okla. July 6, 2011) ("The Tenth Circuit applies the same test applicable to municipalities when determining whether a private prison corporate actor has personally participated in the violation of a prisoner's constitutional rights[.]").

violation.[31] Furthermore, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."[32] When evaluating such a claim, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[33]

The Amended Complaint first alleges that Defendant Turn Key's policy of employing and instructing LPNs to perform independent assessment of inmates at the Oklahoma County Detention Center was the moving force behind Mr. Chouteau's death. The Amended Complaint implies that Defendants Jaquez and Oliver were LPNs, although it does not explicitly state what medical license they held.[34] Plaintiff argues that LPNs are not qualified, licensed, or trained under nursing standards to independently evaluate serious signs and symptoms, including acute intoxication events.

---

[31] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013).

[32] *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985).

[33] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1288 (10th Cir. 2019) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410–12 (1997)).

[34] Plaintiff's Response to Defendant Turn Key's Motion to Dismiss claims that Defendant Jaquez is an LPN and Defendant Oliver is an emergency medical technician ("EMT"). Pl.'s Resp. (Dkt. 20), at 11. However, when determining whether to grant a motion to dismiss, district courts "are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (citation omitted).

Defendant Turn Key responds that Defendant Jaquez and Oliver's qualifications are irrelevant since Plaintiff never alleged that a medical assessment took place. However, the Amended Complaint clearly alleges that Defendants Jaquez and Oliver observed Mr. Chouteau upon intake. This is the type of independent assessment Plaintiff argues LPNs are unqualified to perform. Next, Defendant Turn Key argues that LPNs are, in fact, qualified under the Oklahoma Nursing Practices Act to contribute to health assessments.

The Oklahoma Nursing Practices Act states that "'License practical nursing' means the practice of nursing under the supervision or direction of a registered nurse, licensed physician or dentist. This directed scope of nursing practice includes, but is not limited to . . . contributing to the assessment of the health status of individuals and groups[.]"[35] Here, there is no allegation that Defendants Jaquez and Oliver were acting under the supervision or direction of a registered nurse or licensed physician when they observed Mr. Chouteau. However, Plaintiff has not alleged that Defendant Turn Key's policy of employing LPNs to perform independent health assessments of inmates was facially unconstitutional, and, therefore, Plaintiff must do more than point to this single alleged denial of care.

The Amended Complaint attempts to do so by pointing to other inmate deaths at the Oklahoma County Detention Center. The Amended Complaint also points out that in 2021, an Oklahoma County Grand Jury investigated the operation of OCDC and found that health screenings during the intake process were inadequate, and that a United States Department of Justice report found that OCDC failed to protect inmates from harm and provide

---

[35] Okla. Stat. tit. 59, § 567.3a(4)(A).

adequate housing protections. But these are generalized deficiencies in OCDC's operation of the jail, rather than any specific deficient policy of the Defendant here: Turn Key. Accordingly, Plaintiff has not demonstrated a causal connection between Defendant Turn Key's alleged policy of employing LPNs to conduct independent assessments of inmates' health and the alleged denial of care that led to Mr. Chouteau's death.

Finally, the Amended Complaint claims that Defendant Turn Key permitted to exist unconstitutional customs of: (1) failing to provide necessary treatment to patients suffering from serious physical illnesses; (2) failing to adequately monitor patients suffering from serious medical conditions; (3) delegating responsibility for monitoring patients with serious medical needs to unqualified correctional officers; and (4) allowing physically ill individuals to be confined at the jail despite the insufficient resources to adequately care for them. Plaintiff is correct that municipal liability may "be based on an informal 'custom' so long as this custom amounts to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"[36] However, Plaintiff provides no specific factual allegations to support the existence of these alleged customs and practices. The Amended Complaint thus fails to provide any policy or custom sufficient to hold Defendant Turn Key liable for Mr. Chouteau's death. The Court therefore dismisses Plaintiff's § 1983 claims against Defendant Turn Key.

---

[36] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

## II. *Plaintiff's State-Law Claims*

Plaintiff asserts state-law medical negligence and wrongful death claims against Defendants Turn Key, Jaquez and Oliver. Those Defendants counter that they are immune from liability for these claims pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA").

Under § 155(25) of the OGTCA, "[a]n employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability."[37] Defendants argue that this provision extends to jail healthcare contractors and their employees because the OGTCA defines "employee" as including "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates."[38] Defendants further argue that, pursuant to the Oklahoma Supreme Court's decision in *Barrios v. Haskell Cnty. Pub. Facilities Auth.*,[39] OGTCA immunity applies to correctional healthcare contractors, such as Defendant Turn Key and its employees.

The Tenth Circuit rejected this argument in *Lucas v. Turn Key Health Clinics, LLC*, explaining that "*Barrios* did not find that a healthcare contractor at a jail was an employee entitled to tort immunity under the OGTCA but simply assumed the healthcare contractor was an employee for purposes of answering the certified questions before it."[40] The Tenth

---

[37] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1147 (10th Cir. 2023).

[38] Okla. Stat. tit. 51 § 152(7)(b)(7).

[39] 2018 OK 90, 432 P.3d 233, 236 n.5 (Okla. 2018),

[40] 58 F.4th at 1147–48.

13

Circuit instead held that "[o]n a motion to dismiss, it was premature" to determine that a correctional healthcare contractor was "entitled to immunity based on *Barrios*'s non-binding legal assumption," and the "proper route in this instance without further guidance from Oklahoma courts is to determine the OGTCA's applicability to private corporations — and their employees — that contract with the state to provide medical services at the summary judgment stage if the factual record is sufficiently developed and the facts are uncontroverted."[41]

Plaintiff's allegations do not conclusively establish that Defendants Turn Key, Jaquez, and Oliver are entitled to immunity under the OGTCA. Consistent with the Tenth Circuit's holding in *Lucas*, the Court declines to dismiss Plaintiff's state-law medical negligence and wrongful death claims against these Defendants on this ground at the pleading stage.

## *Conclusion*

For the reasons given above, the Court **GRANTS** Defendants Jones, Hooker, and Khan's Motions to Dismiss (Dkts. 29, 40), **GRANTS** in part and **DENIES** in part Defendant Turn Key's Motion to Dismiss (Dkt. 19), and **DENIES** Defendants Jaquez and Oliver's Motions to Dismiss (Dkts. 37, 48). Plaintiff's § 1983 claims against Defendants Jones, Hooker, Khan, and Turn Key are **DISMISSED** without prejudice.

---

[41] *Id.* at 1148; *see also Ramirez v. Kay Cnty. Just. Facilities Auth.*, No. CIV-21-00971-JD, 2024 WL 2732300, 2024 U.S. Dist. LEXIS 94300, at *5 (W.D. Okla. May 28, 2024); *Bonilla v. Gerlach*, No. CIV 23-1060-R, 2024 WL 457172, 2024 U.S. Dist. LEXIS 20444, at *5 (W.D. Okla. Feb. 6, 2024) (applying *Lucas* in declining to dismiss state-law claims against correctional healthcare contractors pursuant to OGTCA immunity).

**IT IS SO ORDERED** this 2nd day of August 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE